UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
MIGUEL NARRO and
JANE M. NARRO,
    Debtors.                                      No. 7-10-15859 SA

MIGUEL NARRO and
JANE M. NARRO,
    Plaintiffs,
v.                                                    Adv. No. 11-1070 S

FORD MOTOR CREDIT,[1]
    Defendant.

**MEMORANDUM OPINION
IN SUPPORT OF ORDER GRANTING
<u>DEFENDANT'S MOTION TO DISMISS</u>**

This matter is before the Court on Defendant Ford Motor Credit's Motion to Dismiss[2] (doc 17). Plaintiffs ("Plaintiffs" or "Debtors") are represented by the Banning Law Firm (Dennis A. Banning). Defendant ("Defendant" or "Ford") is represented by its attorneys Allan L. Wainwright and Kilpatrick & Associates, P.C. (Richardo I. Kilpatrick). The parties filed briefs in support of their respective positions. The Court has reviewed the briefs and consulted applicable authorities and now issues

---

[1] Sic. In fact, it appears that Defendant's current name is "Ford Motor Credit, LLC", <u>see</u> Answer (doc 10), and that previously it was "Ford Motor Credit Company". <u>See</u> Motion to Dismiss (doc 17). Since Defendant has (helpfully) made no issue of the specific name, the Court will use the name as it initially appeared on the complaint.

[2] The Motion to Dismiss cites Fed.R.Civ.P. 12(b)(6) as the basis of the motion. The Memorandum in Support of the Motion, Part II, also seeks dismissal for lack of subject matter jurisdiction, implicating Rule 12(b)(1).

this Memorandum Opinion. The Court finds that the Motion to Dismiss should be granted.

**LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)**

> "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." <u>Henry v. Office of Thrift Supervision</u>, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." <u>Ruiz v. McDonnell</u>, 299 F.3d 1173, 1180 (10th Cir. 2002).
>> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. <u>See</u> <u>Ruiz v. Mc-Donnell</u>, 299 F.3d at 1180; <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.
> <u>Alto Eldorado Partners v. City of Santa Fe</u>, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D. N.M. Mar. 11, 2009)(Browning, J.)(citations omitted). As the

United States Court of Appeals for the Fifth Circuit has stated:
> [T]he trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412–13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n. 5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

Walker v. THI of New Mexico at Hobbs Center, 803 F.Supp.2d 1287, 1294-96 (D. N.M. 2011).

Case 11-01070-t    Doc 31    Filed 09/12/12    Entered 09/12/12 14:37:12 Page 3 of 20

# STANDARDS FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 545, 127 S.Ct. 1955 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570, 127 S.Ct. 1955; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

Case 11-01070-t    Doc 31    Filed 09/12/12    Entered 09/12/12 14:37:12 Page 4 of 20

misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1940, 129 S.Ct. 1937. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974) (citations omitted).

Genesee County Employees' Retirement System v. Thornburg Mortgage Securities Trust 2006-3, 825 F.Supp.2d 1082, 1120-21 (D. N.M. 2011).

**LAW REGARDING TAKING JUDICIAL NOTICE OF DOCUMENTS WHEN RULING ON A MOTION TO DISMISS**

> Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court;" or (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b), (f). "Adjudicative facts are simply the facts of the particular case." United States v. Wolny, 133 F.3d 758, 764 (10th Cir. 1998) (quoting Advisory Committee Notes to rule 201). A court has discretion to take judicial notice of such facts, whether requested or not. See Fed.R.Evid. 201(c). On the other hand, if a party requests that the court take judicial notice of

certain facts, and supplies the necessary information to the court, judicial notice is mandatory. See Fed.R.Evid. 201(d). Also, if the parties timely request an opportunity to be heard, the Court must grant such an opportunity "as to the propriety of taking judicial notice and the tenor of the matter noticed." Fed.R.Evid. 201(e).

Judicial notice may be taken during any stage of the judicial proceeding, including the stage of a motion to dismiss. See 21B C. Wright & K. Graham, Federal Practice & Procedure § 5110, at 294 & n. 17 (2d ed. 2005). And, while ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, see Fed.R.Civ.P. 12(d), matters that are judicially noticeable do not have that effect, see Duprey v. Twelfth Judicial Dist. Court, 760 F.Supp.2d 1180, 1192-93 (D. N.M. 2009)(Browning, J.)(citing Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n. 1 (10th Cir. 2004)). Also, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). The documents judicially noticed, however, should not be considered for the truth of the matters asserted therein:
> Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

Page -6-

> <u>Tal v. Hogan</u>, 453 F.3d at 1265 n. 24 (alterations omitted)(citations omitted)(internal quotation marks omitted).
>
> In addition to those documents that are judicially noticeable, a court may consider documents to which the complaint refers, if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. <u>See</u> <u>Jacobsen v. Deseret Book Co.</u>, 287 F.3d 936, 941-42 (10th Cir. 2002). If a document is not incorporated by reference or attached to the complaint, but is referenced in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." <u>GFF Corp. v. Assoc. Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th Cir. 1997). <u>See</u> 5A C. Wright & A. Miller, Federal Practice & Procedure § 1327, at 438-39 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading ... the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

<u>Genesee County Employees' Retirement System</u>**,** 825 F. Supp.2d at 1121-23 (Footnote omitted.)

**<u>PROCEDURAL POSTURE</u>**

The Court takes judicial notice of the Plaintiffs' bankruptcy case No. 7-10-15859 SA filed on November 24, 2010. Their Schedule B listed a 2006 Lincoln Navigator ("Vehicle"), valued at $14,000 and subject to a lien with Ford. Schedule D listed Ford as a secured creditor on the Vehicle with a claim of $27,144.79. On Schedule C the Debtors claimed the Vehicle exempt. Doc 1. Debtors filed a Statement of Intention with the petition that listed Ford as a secured creditor on the Vehicle, and stated that Debtors would retain the Vehicle, reaffirm the debt and claim it exempt. Doc 6. The first meeting of creditors

Page -7-

was scheduled for December 20, 2010.  Doc 2.  On December 23, 2010 the Chapter 7 Trustee filed a Report of No Distribution and certified that the meeting of creditors was held and concluded and that the estate had been fully administered.  Doc 12.

On January 25, 2011 Debtors' attorney filed a Reaffirmation Agreement between Debtor and Ford concerning the Vehicle.  Doc 13.  The Reaffirmation Cover Sheet listed a net monthly income (deficit) of <$501.70>.  Debtors' attorney signed the coversheet and certified that "the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet."  The first page of the Reaffirmation Agreement states that there is a "Presumption of Undue Hardship."  The Reaffirmation Agreement was signed by the Debtors and dated December 20, 2010.  Ford did not sign or date the agreement.  Part C of the Reaffirmation Agreement, the Certification by Debtors' Attorney, stated as follows:

> I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) ~~this agreement does not impose an undue hardship on the debtor or any dependent of the debtor;~~ and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

(Strikeout in original.)  Debtors' attorney signed the altered certification and dated it December 20, 2010.  No hearing on the Reaffirmation Agreement was requested by any party or scheduled

Page -8-

by the Court.  On March 28, 2011 the Debtors were discharged, the Final Decree was entered and the case was closed.  Docs 20, 21.  On April 22, 2011 Debtors commenced this adversary proceeding.

**THE COMPLAINT**

The Complaint is styled "Complaint to Compel Turnover of Property and for Willful Violation of the Discharge Injunction." Doc 1.  It alleges:

> **COME NOW** the Plaintiffs, Miguel Narro and Jane Narro (hereinafter referred to as "Narro"), by and through counsel as undersigned, and would pray the Court for an Order requiring the immediate return of property to the Debtor's possession, and enjoining violation of the Discharge Injunction pursuant to 11 U.S.C. §524, and in support thereof would state as follows:
>
> **JURISDICTION AND VENUE**
> 1.  This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (F).
> 2.  Jurisdiction is conferred on this Court pursuant to the provisions of §157(b)(2) and §1334 of Title 28 of the U.S. Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtor in that case. The Court has inherent jurisdiction to enforce the dignity of the Court and proceedings before it, and has jurisdiction pursuant to Section 105 of Title 11 of the U.S. Code to enter any relief in furtherance of, and in order to protect, the dignity and integrity of proceedings before this Court.
> 3.  Venue is proper herein pursuant to 28 U.S.C. §1409.
>
> **COUNT I: COMPLAINT TO ENJOIN VIOLATION OF THE DISCHARGE INJUNCTION UNDER §524**
> 4. The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 24th, 2010.
> 5. Debtors filed their Chapter 7 Individual Debtor's Statement of Intention on November 24th, 2010.
> 6. The Debtor's Statement of Intention indicated the 2006 Lincoln was claimed as exempt, and indicated the Debtors intent to retain their 2006 Lincoln Navigator

and reaffirm the debt with Ford Motor Credit which is secured by the vehicle.
7. The Debtor's 341 Meeting was set for and held on December 20th, 2010.
8. On December 20th, 2010 the Debtors signed the Reaffirmation Agreement sent to them by Ford Motor Credit.
9. On or about December 20th, 2010 Counsel for Debtors mailed the signed Reaffirmation Agreement to Allan Wainwright, Counsel for Ford Motor Credit.
10. On January 25th, 2011 the Reaffirmation Agreement was filed in the Bankruptcy Court by Counsel for the Debtors.
11. On March 28th, 2011 the Debtors received a Discharge in their bankruptcy, and the Discharge was entered on the docket on March 30th, 2011.
12. On April 21st, 2011 with full knowledge of these facts, Ford Motor Credit sent representatives to repossess the Debtors 2006 Lincoln Navigator, despite the Debtors being current on their payments and having insurance in place.
13. The actions of Ford Motor Credit on April 21st, 2011 constitute a willful, knowing, intentional violation of the Discharge injunction provided by §524 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff prays for an Order from this Court: requiring the immediate return of the 2006 Lincoln Navigator to the Debtors in the condition it was in prior to the repossession; for compensation for lost wages due to the Debtors inability to work, for the reimbursement of expenses for an extended warranty and for repairs to the 2006 Lincoln Navigator, for an award against the Defendant and in favor of the Plaintiff for damages for all violations of the automatic stay and of the Discharge Order, for attorneys fees and for punitive damages in the amount of $25000.00, and for any other relief the Court deems just and proper.

Debtors also filed a Motion for Turnover of the Vehicle with the Complaint. Doc 2. The parties resolved the Turnover issue in a Stipulated Order entered April 28, 2011. Doc 7.

Ford filed an answer, denying most of the allegations[3] (doc 10) and filed a Motion to Dismiss (doc 17). Part 1 of the Motion to Dismiss argues that the facts alleged do not constitute a violation of the discharge injunction. Part 2 argues that the Bankruptcy Court lacks subject matter jurisdiction over any claims the Debtors may have. Each will be addressed. First, however, the Court will briefly discuss the reaffirmation aspects of the case.

**REAFFIRMATION**

>Reaffirmation agreements run contrary to the concept of the "fresh start." Debt that would otherwise be trapped within the snare of the bankruptcy discharge, if reaffirmed, remains the debtor's personal liability and burden. Consider the following statement of the United States Court of Appeals for the First Circuit:
>
>>Although reaffirmation is consensual in nature, the myriad safeguards erected by Congress reflect its recognition that a debtor's decision to enter into a reaffirmation agreement is likely to be fraught with consequence. In point of fact, reaffirmation represents the only vehicle through which an otherwise dischargeable debt can survive the successful completion of Chapter 7 proceedings. Moreover, once a debt is reaffirmed, the creditor can proceed to enforce its rights as if bankruptcy had not intervened. Because reaffirmation constitutes a debtor-invoked exception to the tenet that underpins the bankruptcy system-the "fresh start" principle-a reaffirming debtor must be afforded some protection against his own (potentially) short-sighted decisions.

---

[3] Ford specifically denies that this adversary proceeding is a core proceeding. It also does not consent to the entry of final orders by the Bankruptcy Court. Doc 18, p.18 n.3.

> In re Jamo, 283 F.3d 392, 398 (1st Cir.2002).
>
> Many such protections are found in the Bankruptcy Code. Reaffirmation agreements must be in writing and entered into prior to the granting of the discharge. § 524(c)(1). The debtor must be advised that reaffirmation agreements are purely voluntary. § 524(c)(2). He or she must be advised of the consequences and effect of a reaffirmation agreement, either by counsel or the Court. § 524(c)(3) and (d). A debtor also has an absolute right to rescind a reaffirmation agreement within certain time frames. § 524(c)(4). In addition, in order for a reaffirmation agreement to be binding, one of two additional events must take place: if a debtor is represented by counsel, his or her counsel must file a declaration or affidavit stating that the reaffirmation agreement was voluntarily and knowledgeably entered into by the debtor, that counsel explained the effects and consequences of the reaffirmation, and that, in the attorney's opinion, reaffirmation of the debt at issue does not impose an undue hardship upon the debtor or any of his or her dependents. § 524(c)(3); see also In re Minardi, 399 B.R. 841 (Bankr. N.D. Okla. 2009). If a debtor is not represented by counsel, then the Court must hold a hearing at which the debtor must appear. At that hearing, the Court must explain to the debtor the legal effect of the reaffirmation agreement, and find that reaffirmation of the debt at issue does not impose an undue hardship upon the debtor or any of the debtor's dependents. § 524(d). These requirements represent an attempt to insure that a debtor does not improvidently enter into reaffirmation agreements, and that the vitality of a debtor's "fresh start" is preserved.

In re Reed, 403 B.R. 102, 104 (Bankr. N.D. Okla. 2009).

When represented by counsel, the attorney's affidavit or declaration must be completed and filed as part of the reaffirmation agreement for it to be valid. And, "11 U.S.C. § 524(c) is not satisfied if counsel does not make all the certifications set forth in § 524(c)(3), including the no undue

Case 11-01070-t    Doc 31    Filed 09/12/12    Entered 09/12/12 14:37:12 Page 12 of 20

hardship certification set forth in § 524(c)(3)(B)." In re Perez, 2010 WL 2737187 at *4 (Bankr. D. N.M. 2010).

In this case, Debtors' attorney did not make the no undue hardship certification. The reaffirmation agreement is therefore not enforceable. Debtors' debt to Ford was discharged.

**DISCHARGE INJUNCTION**

Bankruptcy Code section 524(a)(2) is the source of the discharge injunction:

> A discharge in a case under this title ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]
>
> "[A] bankruptcy court may sanction a party for violating the discharge injunction only if the party took some action prohibited by § 524(a)(2)— i.e., an action 'to collect, recover or offset any [discharged] debt ... of the debtor.'"

Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1307 (10th Cir. 2008). However,

> [n]otwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves "the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly," i.e., so as to obtain payment of the discharged debt. Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006); see In re Schlichtmann, 375 B.R. 41, 95–97 (Bankr. D. Mass. 2007)(applying Pratt with extensive discussion); see also In re Jones, 367 B.R. 564, 570 & n. 3 (Bankr. E.D. Va. 2007); 3 Norton Bankruptcy Law & Practice 3d § 58:5, at 58-24 & n. 13 (noting that discharge injunction precludes otherwise permissible actions against third parties if "designed to collect the debt

>     from the discharged debtor"). The inquiry is
>     objective; the question is whether the creditor's
>     conduct had the practical, concrete effect of coercing
>     payment of a discharged debt, and bad faith is not
>     required. In re Pratt, 462 F.3d at 19; In re
>     Schlichtmann, 375 B.R. at 95.

Id. at 1308.

The discharge injunction protects the debtor from personal liability on prepetition debts. 11 U.S.C. § 524(a)(2) ("as a personal liability of the debtor.") The discharge injunction does not preclude in rem actions by secured creditors. Chandler Bank of Lyons v. Ray (In re Ray), 804 F.2d 577, 579 (10th Cir. 1986). See also In re Paul, 534 F.3d at 1308 n.6 ("The discharge injunction prohibits efforts to collect a debt 'as a personal liability of the debtor,' 11 U.S.C. § 524(a)(2) (emphasis added), and thus in rem rights are not affected. 3 Norton Bankruptcy Law & Practice 3d § 58:4."); Arruda v. Sears, Roebuck & Co. (In re Arruda), 310 F.3d 13, 21 (1st Cir. 2002):

>     It is hornbook law that a valid lien survives a
>     discharge in bankruptcy unless it is avoidable and the
>     debtor takes the proper steps to avoid it. Holloway v.
>     John Hancock Mut. Life Ins. Co. (In re Holloway), 81
>     F.3d 1062, 1063 (11th Cir. 1996). A surviving lien
>     remains enforceable, for "a bankruptcy discharge
>     extinguishes only one mode of enforcing a claim-namely,
>     an action against the debtor in personam-while leaving
>     intact another-namely, an action against the debtor in
>     rem." Johnson v. Home State Bank, 501 U.S. 78, 84, 111
>     S.Ct. 2150, 115 L.Ed.2d 66 (1991).

The Plaintiffs' complaint is that, basically, they filed bankruptcy and stated an intention to reaffirm the debt; Ford sent them a reaffirmation agreement; they (albeit not Ford)

Case 11-01070-t    Doc 31    Filed 09/12/12    Entered 09/12/12 14:37:12 Page 14 of 20

signed it and it was filed with the Court; they received their discharge; and after their discharge, despite being current on their payments and having insurance on the vehicle, Ford sent representatives to repossess the vehicle. Taking all of these facts as true and viewing them in a light most favorable to the Plaintiffs, the Court finds that this does not state a cause of action. These facts do not allege any misconduct by Ford. Ford had a valid lien on the vehicle and exercised its rights to repossess. Plaintiffs do not allege that the repossession lacked any legitimate economic purpose or that it was a veiled attempt to obtain payment of the discharged debt. The facts alleged do not support a claim for violation of the discharge injunction, so the case should be dismissed under Rule 12(b)(6)[4].

---

[4]Of course, if the complaint stated a cause of action for violation of the discharge injunction, this Court would have core jurisdiction over it. Discharges "arise under" Title 11, so the bankruptcy courts have core jurisdiction under 28 U.S.C. § 157(b)(1). See In re Kewanee Boiler Corp., 270 B.R. 912, 917 (Bankr. N.D. Ill. 2002)

> A case "arises under" Title 11 when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. 1 Collier on Bankruptcy ¶ 3.01[4][c][i] (Matthew Bender 15th ed. rev. 2001).
> ...
> Proceedings flowing from a core matter are themselves core matters. In re Williams, 256 B.R. 885, 892 (8th Cir. BAP 2001). Moreover, bankruptcy courts have core jurisdiction to interpret and enforce their orders. Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir. 2001); Matter of Weber, 25 F.3d 413, 416 (7th Cir. 1994) (bankruptcy court's interpretation of its own confirmation order is entitled to the same deference as accorded any court construing its own

(continued...)

**JURISDICTION**

Bankruptcy Court jurisdiction is established by 28 U.S.C. § 1334, which lists four types of matters over which the district court has bankruptcy jurisdiction: 1) cases "under" title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, etc. petition), 2) proceedings "arising under" title 11 (such as a preference recovery action under § 547), 3) proceedings "arising in" a case under title 11 (such as plan confirmation), and 4) proceedings "related to" a case under title 11 (such as a collection action against a third party for a pre-petition debt). Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987). In the District of New Mexico, all four types have been referred to the bankruptcy court. See 28 U.S.C. § 157(a); Administrative Order, Misc. No. 84-0324 (D. N.M. March 19, 1992).

Jurisdiction is then further broken down by 28 U.S.C. § 157, which grants full judicial power to bankruptcy courts not only over cases "under" title 11 but also over "core" proceedings, § 157(b)(1), but grants only limited judicial power over "related" or "non-core" proceedings, § 157(c)(1). Wood, 825 F.2d at 91; Personette v. Kennedy (In re Midgard Corporation), 204 B.R. 764, 771 (10th Cir. BAP 1997). This core/non-core distinction is important, because it defines the extent of the Bankruptcy Court's jurisdiction and the standard by which the District Court (or Bankruptcy Appellate Panel) reviews the factual findings. Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999).

**Core proceedings**

"Core" proceedings are matters "arising under" and "arising in" cases under title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise under" title 11 if they involve a cause of action created or determined by a statutory provision of title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise in" a bankruptcy if they concern the administration of the bankruptcy case and have no existence outside of the bankruptcy. Wood, 825 F.2d at 97; Midgard, 204 B.R. at 771. Bankruptcy judges may

---

[4](...continued)
judgments).

hear and determine core proceedings and enter final orders and judgments. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) contains a nonexclusive list of 16 types of core proceedings.

**Non-core proceedings**

"Non-core" proceedings are those that do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. "Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." Celotex Corporation v. Edwards, 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Tenth Circuit has adopted the widely used Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984) test to determine if a proceeding is related: "the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy case." Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990).

Bankruptcy courts have jurisdiction over non-core proceedings if they are at least "related to" a case under title 11. 28 U.S.C. § 157(c)(1)("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.") However, unless all parties consent otherwise, 28 U.S.C. § 157(c)(2), bankruptcy judges do not enter final orders or judgments in non-core proceedings. Rather, they submit proposed findings of fact and conclusions of law to the district court, which enters final orders and judgments after de novo review. 28 U.S.C. § 157(c)(1); Federal Bankruptcy Rule 9033. See also Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corporation), 4 F.3d 1095, 1100-01 (2nd Cir. 1993)(discussing Section 157's classification scheme).

McCraney v. High Desert Neurology, Inc. (In re McCraney), 439 B.R. 188, 190-92 (Bankr. D. N.M. 2010).[5]

---

[5] The facts of this case do not implicate the issue of the
(continued...)

The Court makes two initial observations. First, a chapter 7 estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case (with certain exceptions not relevant here). 11 U.S.C. § 541(a). Property subsequently acquired by the debtor does not become estate property, but becomes the debtor's, clear of all claims that are discharged by the bankruptcy proceedings. <u>Patrick A. Casey, P.A. v. Hochman (In re Hochman)</u>, 963 F.2d 1347, 1350 (10th Cir. 1992)(Citation omitted). Second, when a chapter 7 bankruptcy is closed, all scheduled property is deemed administered and is abandoned. 11 U.S.C. § 554(c). Therefore, after closing, there is no longer a bankruptcy estate.

As stated above, Plaintiffs' complaint fails to state a cause of action for violation of the discharge injunction. To the extent the Plaintiffs' complaint can be construed to state any other cause of action, the Bankruptcy Court lacks jurisdiction to hear it.

Debtors' contract claim against Ford is not a case under title 11. It cannot be initiated by filing a petition with the bankruptcy court. <u>See</u> 11 U.S.C. § 301(a). The contract claim does not "arise under" title 11 because the claim is not created

---

$^{5}$(...continued)
constitutional authority of a non-Article III court to adjudicate state law controversies as addressed in <u>Stern v. Marshall</u>, 564 U.S. ___, 131 S.Ct. 2594 (2011).

or governed by any provision in title 11. The contract claim also does not "arise in" a case under title 11; the claim can exist whether a bankruptcy case was filed or not. In fact, the bankruptcy was closed before the claim accrued. Therefore, there is federal jurisdiction only if the contract claim is "related to" a case under title 11. See 28 U.S.C. §§ 1334(a)[6] and (b)[7].

Under Tenth Circuit law, the contract claim is not "related to" Debtor's bankruptcy case. In re Gardner, 913 F.2d at 1518. While the outcome may affect the Debtors' rights in some way, there can be no impact on the handling or administration of their bankruptcy case. As noted above, the contract claim is not estate property. Any proceeds of the claim will benefit the Debtors only, not the creditors. Therefore, the Bankruptcy Court lacks jurisdiction to hear or determine the Debtors' post-petition contract claim against Ford.

**CONCLUSION**

The Court will enter an Order dismissing this adversary proceeding.

---

[6] 28 U.S.C. § 1334(a) provides, in part: "[T]he district courts shall have original and exclusive jurisdiction of all cases under title 11."

[7] 28 U.S.C. § 1334(b) provides, in part: "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."



```
                        Honorable James S. Starzynski
                        United States Bankruptcy Judge
```

Date Entered on Docket:  September 12, 2012

Copies to:

Dennis A Banning
Banning Law Firm
10801 Lomas Blvd, NE
Suite 104
Albuquerque, NM 87112

Allan L Wainwright
800 Lomas Blvd NW
Albuquerque, NM 87102-3150

Richardo I Kilpatrick
Kilpatrick & Associates, P.C.
903 North Opdyke Road Ste C
Auburn Hills, MI 48326